# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KENDALL STATE BANK, )
)
Plaintiff, )
)
vs. ) Case No. 10-2319-JTM/KGG
)
WEST POINT UNDERWRITERS, LLC, )
)
Defendant. )
_____ )

## MEMORANDUM AND ORDER

Before the Court is the Motion to Compel filed by Plaintiff Kendall State Bank. (Doc. 69.) Plaintiff seeks an Order requiring Defendant to produce documents "that may show whether [Defendant] justifiably relied on a representation" allegedly made by a third party that Defendant contends fraudulently induced it to obtain the loan at issue. (Doc. 70, at 1.) Having reviewed the submissions of the parties, the Court **DENIES** Plaintiff's motion (Doc. 69).

## BACKGROUND

The Court has summarized the factual background of this case in three recent Orders relating to discovery issues. (*See* Docs. 83, 93, and 97.) For purposes of clarity, however, the Court will also include such a summary herein.

Plaintiff's claims result from a commercial loan ("Loan 4922" or "the Loan") made by Brooke Credit Corporation (l/k/a Aleritas Capital Corporation) to Defendant West Point Underwriters (Defendant). (Doc. 76, Second Amended Complaint, at § 8.) Aleritas is alleged to have sold participations in the Loan to Plaintiff Kendal State Bank (Plaintiff) and other banks. (*Id*., at § 14.) After selling the loan participations, Aleritas served as the administrator of the Loan. (*Id*., at § 19.) Plaintiff subsequently acquired one of the other interests in the Loan, as did certain other banks, who are collectively referred to as "the Participants." (*Id*., at §§ 15, 16.)

Plaintiff alleges that the relevant participation agreements state that "any failure by Aleritas to comply with its obligations under those agreements, or any act of insolvency by Aleritas authorizes the Participants to remove Aleritas as the administrator of the Loan and transfer its powers to one of the Participants." (*Id*., at § 20.) Plaintiff contends that in August 2008, Aleritas was removed as the administrator of the Loan and the administration of the Loan was transferred to Plaintiff. (*Id*., at §§ 21, 22.)

Plaintiff claims it is representing the interests of all the Participants in this lawsuit. (*See* Doc. 48-1, at 5.) Plaintiff alleges that Defendant materially breached the underlying loan agreement by causing one or more events of default. (*See*

*generally*, Doc. 76.)  Plaintiff also contends that Defendant has not fully performed its obligations under the loan agreement and has not retracted its repudiation of its remaining obligations.  (*Id*.)  Finally, Plaintiff seeks a declaratory judgment stating that it is entitled to enforce the loan agreement against Defendant, on which Plaintiff contends Defendant owes approximately $1.8 million.  (*Id*.)

Defendant has brought a counterclaim, as well as several affirmative defenses, that are based in part on allegations of fraud by third-party Aleritas.  Defendant also has filed a Complaint in the Supreme Court of the State of New York against Aleritas and Brooke Capital Advisers relating to the loan at issue in this lawsuit.  (*See* Doc. 17, at ¶ 33; Doc. 17-1.)  Defendant has brought a claim of fraudulent inducement against Aleritas and Brooke Capital in the New York lawsuit, contending that they "made knowing misrepresentations of material fact with the intent to deceive [Defendant] and in order to induce [Defendant] to enter into" Loan #4922.  (Doc. 17-1, at 6.)  More specifically, Defendant alleges that Aleritas fraudulently represented that a third-party, DB Indemnity, Ltd. would issue an indemnity policy to cover Loan #4922.  (*Id*.)

## **DISCUSSION**

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .

3

Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." As such, the requested information must be both nonprivileged and relevant to be discoverable.

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." *Teichgraeber v. Memorial Union Corp. of Emporia State University*, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted). "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991). Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991). The scope of discovery is broad, but not unlimited. If the proponent has failed to specify how the information is relevant, the Court will not require the respondent to produce the evidence. *Gheesling v. Chater*, 162 F.R.D. 649 (D. Kan. 1995).

Plaintiff brings the present Motion to Compel (Doc. 69), challenging certain objections Defendant Plaintiff raised in response to Plaintiff's Request for Production No. 35.  The request sought "[e]very document relating to any investigation of DB Indemnity, Ltd. that you made."  (Doc. 69-1, at 10.)  Defendant objected that

> [t]his request is vague as to what is meant by or contemplated within the universe of documents 'relating to any investigation' of DB Indemnity, Ltd.  Without waiving this objection, [Defendant] conducted no formal investigation of DB Indemnity, Ltd. other than whatever investigation has been conducted by counsel.  Defendant objects to this request to the extent it seeks documents possessed by [its] counsel pursuant to counsel's investigation, under the attorney work-product doctrine.

(Doc. 69-3, at 12.)

Plaintiff argues that Defendant's response was deficient in the following ways:  1) Defendant failed to describe the documents withheld "in detail"; 2) Defendant did not "create" the documents so the work product doctrine cannot apply; 3) defense counsel used a "similar document" as a deposition exhibit, thereby waiving the doctrine; and 4) "the documents relate to an element of the party's claim and affirmative defenses, and the party's adversary cannot investigate that element without reviewing the documents at issue."  (*See* Doc. 70, at 3.)  The Court finds Plaintiff's arguments to be unpersuasive.

A.    **Description of Withheld Documents**.

The Court has reviewed Defendant's privilege log.  (Doc. 72-2.)  The Court is sympathetic to Plaintiff's criticism that the documents have not be described with sufficient particularity.  However, the Court agrees with Defendant's characterization that

> [t]here are certain documents that are prepared in the course of litigation that almost universally are not discoverable by one's opponent – including letters to clients, and legal research – that, although they are certainly relevant to the issues at trial, requiring detailed privilege logs in the course of discovery would amount to nothing more than busywork and create expense.

(Doc. 72, at 3.)  The Court notes that Plaintiff admits it did not provide abundant detail in its privilege log when it referenced "certain documents that are incontestably privileged – for example, communications between Kendall State Bank and its attorneys about this litigation, which are described as a group."  (Doc. 74, at 3.)  Further, should Defendant provide additional information about the fruits of its research, it would run the risk of divulging counsel's mental impressions.

B.    **Whether Defendant "Created" the Documents**.

Relying on the case of ***Deya v. Hiawatha Hosp. Ass'n, Inc***., Plaintiff argues that the fruits of defense counsel's internet and legal research are not protected by the work product doctrine because such documents were not "created by" the

6

attorneys. No. 10-2263-JAR/GLR, 2011 WL 1559422, at *6 (D. Kan. April 25, 2011). Plaintiff contends that "documents that WPU's counsel found on the internet likely were not created by or for WPU." (Doc. 70, at 6.) Plaintiff continues that "'legal research' likely was not created by or for WPU." (*Id.*)

The Court finds Plaintiff's reliance on *Deya* to be misplaced. The lone document at issue in *Deya* was not legal research or internet research conducted by counsel. Rather, the *Deya* document was summary of a telephone conversation written by a nurse in a medical malpractice action, at the direction of counsel after a lawsuit had been filed, recounting communications she had with the plaintiffs following the birth of their child (well before the commencement of litigation). *Id*. *Deya* does not stand for the proposition that – nor does it even address the issue of whether – the results of an attorney's internet or legal research are discoverable.

Further, *Deya* includes the following language:

> 'Court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product.' **Materials assembled in the ordinary course of business or for other nonlitigation purposes are not protected by the work product doctrine**.

*Id*. (emphasis added). In the Court's reasoning, this language infers that documents assembled *for* litigation purposes are potentially protected by the doctrine.

7

The United States Supreme Court has held that "the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." ***In re Qwest Commc'ns Int'l, Inc.***, 450 F.3d 1179, 1186 (10th Cir.2006) (citing ***U.S. v. Nobles***, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)).  This Court can think of few categories of documents that would be more prone to divulge an attorney's "mental processes" than the documents requested by Plaintiff – the assembled fruits of counsel's research.  Thus, this Court will not hold, under the facts presented, that the research files of defense counsel are discoverable.

**C.    Whether the Use of a "Similar" Document as a Deposition Exhibit Waived the Doctrine.**

Plaintiff next argues that defense counsel should be compelled to produce the requested documents because "counsel waived any protection afforded by the work product doctrine" by using a document he located on the internet as a deposition exhibit.  (Doc. 70, at 6.)  Defendant disputes Plaintiff's argument – which is unsupported by relevant case law – that merely because defense counsel "decided to use [a] particular document during . . . [a] deposition, that all other legal and internet research by WPU's counsel relating to DB Indemnity, Ltd. is somehow discoverable." (Doc. 72, at 5-6.)  Defendant concedes, however, that any

8

potential claim for protection under the work product doctrine has been waived as to the document used at the deposition only.

The Court agrees with Defendant. The level of waiver proposed by Plaintiff is impractical in its application. In practice, the disclosure of one particular document would then, in effect, waive any protection or privilege afforded to any other similar document. The Court cannot agree with apply any such waiver so broadly, For instance, if an otherwise protected letter were used as a deposition exhibit, this would not necessarily waive privilege as to counsel's entire correspondence folder.

**D.    Whether Plaintiff Cannot Investigate the Allegations without the Documents**.

Plaintiff's final argument is that it has "substantial need for the documents and cannot obtain their substantial equivalent by other means." (Doc. 70, at 7.) Documents prepared in anticipation of litigation, and thus protected by the work product doctrine, are typically not discoverable. Fed.R.Civ.P. 26(b)(3). Such materials may, however, be discovered if "(I) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3).

Plaintiff contends that

9

>WPU's counterclaim and several of its affirmative defenses are based on allegations that Aleritas engaged in fraud.  To show that it was defrauded by Aleritas, WPU must prove that it justifiably relied on Aleritas's alleged representation that DB Indemnity would issue an indemnity policy covering the loan.  If WPU had information that made relying on that representation unreasonable, WPU could not justifiably rely on it without conducting further investigation.  Thus, whether WPU conducted any investigation that yielded information that made relying on Aleritas's alleged representation unreasonable – and, if so, the nature of any further investigation by WPU of that representation, are relevant to WPU's counterclaim and its affirmative defenses.  Accordingly, documents relating to such investigation are discoverable under Rule 26(b).
>
>However, Kendall State Bank cannot determine what WPU knew about DB Indemnity when Aleritas allegedly represented that DB Indemnity would provide an indemnity policy by conducting its own investigation of DB Indemnity.  Such an inquiry might yield documents that WPU <u>might</u> have known about, but Kendall State Bank would not have any way to know which of those documents, if any, WPU <u>actually</u> knew about at the time of Aleritas's alleged representation.

*Id*. (internal citations omitted).

The fatal flaw in Plaintiff's argument is the fact that the legal and internet research being withheld was conducted and compiled by defense counsel who did not represent Defendant until more than 3 years *after* Defendant's alleged reliance on representations from Aleritas regarding DB Indemnity.  (*See* Doc. 72, at 6.)  The reliance at issue occurred in 2006 while defense counsel did not commence its

representation until December 2009.  Defendant's response to the document request at issue specifically indicated that it "conducted no formal investigation of DB Indemnity, Ltd. other than whatever investigation has been conducted by counsel."  (Doc. 69-3, at 12.)  As such, the Court fails to see how research conducted three years later – during the course of litigation – is even remotely relevant to "documents, if any, WPU <u>actually</u> knew about at the time of Aleritas's alleged representation."  (*See* Doc. 70, at 8.)

For the reasons set forth above, Plaintiff's Motion to Compel (Doc. 69) is **DENIED** in its entirety.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 18th day of January, 2012.

 S/ KENNETH G. GALE
Kenneth G. Gale
United States Magistrate Judge