IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENDALL STATE BANK,

        Plaintiff,

v.                                               Case No. 10-2319-JTM

WEST POINT UNDERWRITERS, LLC,

        Defendant.

MEMORANDUM AND ORDER

The following matter comes to the court on Kendall State Bank's Motion to Vacate, Modify, or Correct Arbitral Award (Dkt. 119). For the following reasons the court grants the motion and vacates the arbitration award.

I. Background

Plaintiff Kendall State Bank is a banking corporation located in Kansas and defendant West Point Underwriters ("WPU") is a limited liability company located in Florida. On November 21, 2005, WPU entered into a commercial loan agreement ("Loan") with Aleritas Capital Corporation (Aleritas). The Loan authorizes Aleritas to sell the participatory interests in the loan. Aleritas sold participatory interests in the loan to several banks. Kendall acquired a participatory interest in the loan from one of the original bank participants. The Loan also states that the purchasers of the interests can be considered the "absolute owners" of their interests in the Loan and that West Point "unconditionally agrees that such . . . purchaser may enforce [West Point's] obligations under the Loan."

After selling the interests in the Loan, Aleritas continued to administer the Loan on behalf of the owners of the interests. The participation agreement Kendall entered into with Aleritas provided that Aleritas could be removed as the administrator of the loan if certain qualifying events occurred. Aleritas became insolvent, which incidentally is a qualifying event under the participation agreement. Kendall took over as administrator under the Loan in 2008. Since then, WPU has remitted the loan payments to Kendall, which has distributed the payments to the participants.

On January 5, 2010, WPU initiated an action against Aleritas in Orange County, New York, seeking to rescind its obligations relating to the Loan. WPU claimed that Aleritas had engaged in fraud by failing to deliver on a promise that WPU would receive consulting services and an indemnity policy from third parties. Despite knowing of Kendall's interest in the Loan, WPU did not join Kendall (or any other participating lenders) in the New York action. Kendall filed a motion to intervene and dismiss the case, which the New York court granted finding that "Kendall State Bank clearly has a real and substantial interest in the outcome of the litigation." *See West Point Underwriters v. Aleritas Capital*, No. 202/10 (N.Y. Sup. Ct. Orange County, May 3, 2011).

Kendall filed this action on June 7, 2010, claiming that WPU failed to comply with its obligations relating to its loan and seeking other relief. WPU responded by claiming Kendall cannot enforce those obligations because Aleritas allegedly fraudulently induced WPU to obtain the loan. After discovery was complete, WPU participated in an ex parte arbitration hearing that it had given Kendall no notice of. As a result of the hearing, WPU declared that it had obtained an arbitral award barring

Kendall's claims about the loan. Kendall asks the court to vacate, modify, or clarify that award.

II. Legal Standard

Although the FAA substantially narrows the field upon which an arbitration award may be challenged, it does not eliminate such challenges. An award may be challenged for a variety of "judicially created reasons," including "violations of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing." *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001). A court may also vacate an arbitration award if a party has waived its right to arbitration. *See Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772 (10th Cir. 2010). Whether a party waived its right to arbitration depends on the facts of each case. *Id.* However, the U.S. Court of Appeals for the Tenth Circuit has provided a non-exclusive list of the factors relevant to the analysis of waiver:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir.1988).

Another principle to guide the court is that a party should not be allowed to use arbitration "to manipulate the judicial process." *Hill*, 603 F.3d at 774. For example, in

3

*Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 919 (8th Cir. 2009), a party invoked a right to arbitrate the claim after the court denied its motion to dismiss. The court in *Hill* noted that by filing a dispositive motion, a party makes a conscious decision to litigate its dispute, rather than arbitrate it. 603 F.3d at 774. This decision to litigate precludes the party from subsequently trying to arbitrate the dispute. *Id.* In essence, there is a limit to how long a party can wait and see how a case is faring before invoking a right to arbitration. When a party attempts to "take a mulligan if the court proceeding is progressing unfavorably," this signals that the party is trying to manipulate the judicial process. *Id.*

The principle of efficiency also guides the court. *See id.* The "[s]election of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution." *Id*. While the amount of time that elapsed before a party invoked a right to arbitrate a dispute is not dispositive, what occurred during that time is critical. *See id.* at 775. For example, if discovery was completed, that fact supports finding that a party waived its right to arbitrate the dispute. *See id.* at 776 (citing *MidAm. Federal Savings & Loan Ass'n v. Shearson/Am. Express, Inc.*, 886 F.2d 1249, 1261 (10th Cir. 1989)).

Concluding that a party waived a right to arbitrate a dispute—in contrast to some other types of waiver—does not require that the party "intentionally relinquished a known right." *See id*. at 773. In fact, the Tenth Circuit has affirmed findings of waiver by courts who explicitly acknowledged that they could not determine whether the conduct was intentional or negligent. *See Reid Burton Constr., Inc. v. Carpenters Dist.*

4

*Council of S. Colo.*, 614 F.2d 698, 701 (10th Cir. 1980); *see also Hill*, 603 F.3d at 773 (discussing that holding with approval).

III. Analysis

Although the FAA and *Hall* establish restrictions on the ability of participants to the arbitration to challenge the ultimate award, they do not circumscribe the ability of non-participants to challenge the propriety or validity of the ruling. *West Point Underwriters, Inc. v. Aleritas Capital Corp., et al*, 10-205-JTM, at 5 (D. Kan. Sept. 13, 2012) (order granting Kendall's motion to intervene) (citing to *Hugs & Kisses, Inc., v. Aguirre*, 220 F.3d 890, 892-93 (8th Cir. 2000)). This court has already concluded that Kendall has standing to challenge the arbitration award. *Id.* Thus, the court analyzes the factors relevant to waiver, as established by the Tenth Circuit. *See Peterson*, 849 F.2d at 467–68.

Taking definite steps down the litigation path can waive a party's right to arbitration. *Peterson,* 849 F.2d at 467–68. For more than eighteen months before initiating the Arbitration, WPU asked the New York court to resolve its claim about the Loan. When the New York court dismissed that claim, WPU asked the court to reconsider. The litigation in New York was still pending when WPU initiated the Arbitration, and the court dismissed it nearly a month after the Arbitrator issued the Award.

After Kendall filed suit in Kansas, WPU did not invoke any right to arbitrate. Rather WPU engaged the lawsuit on its merits, moved to dismiss Kendall's claim, and filed an answer and counterclaim—all without contending it wanted to arbitrate any dispute relating to the Loan. WPU's counterclaim asserted the same claim about Aleritas's alleged conduct that WPU subsequently submitted to the Arbitrator. Almost a

year later, WPU amended its answer and counterclaim, once again failing to assert any wish to arbitrate that claim. WPU litigated its claims about the Loan, conducting extensive discovery about the bases of the parties' claims and defenses. The court finds that all of these actions are inconsistent with WPU's later attempt to resolve this claim by arbitration. The court will not allow WPU to progress in litigation to the point of completing discovery and then attempt to arbitrate the claim. *See Hill*, 603 F.3d at 774. Additionally, WPU filed a counterclaim against Kendall based on claims it wished to have arbitrated, but WPU did not seek a stay upon filing its counterclaim. This factor leans in favor of finding a waiver of arbitration rights. *See Peterson*, 849 F.2d at 467–68. Given the time between the start of litigation and the start of arbitration, and also considering the dispositive motion, answers and counterclaims, the court finds that WPU waived its right to arbitration.

Further, WPU's attempt to win an arbitration award on its obligations under the loan without even giving notice to Kendall—a party with an obvious interest in the outcome—sets the issue of judicial manipulation squarely before the court. WPU claims on one hand that Kendall has no interest in the arbitration action between it and Aleritas, the defunct lender that failed to show up to the action. On the other hand, WPU attempts to use the arbitration award to entirely negate Kendall's claims in this case. WPU cannot have it both ways.

At best, WPU's tactics have come at the expense of efficiency; at worst, they have manipulated the judicial system. Regardless of which side of the spectrum WPU's actions fall on, they have prejudiced Kendall in obtaining an ex parte order with full

knowledge of Kendall's interests in the action. This court will not allow WPU to "take a mulligan" on this litigation. *See Hooper*, 603 F.3d at 774.

IV. Conclusion

Based on the factors set out by the Tenth Circuit in *Peterson*, the court finds that WPU's actions waived its right to arbitration. Accordingly, the court vacates the arbitral award.

IT IS THEREFORE ORDERED this 4th day of January, 2013, that Kendall's motion (Dkt. 119) is granted and WPU's arbitral award is vacated.

s/ J. Thomas Marten<br>J. THOMAS MARTEN, JUDGE